**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| **C.E.B. INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action No.** |
| **v.** | ) | **25-13063-BEM** |
| | ) | |
| **HCL AMERICA INC., et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**MEMORANDUM AND ORDER ON**
**DEFENDANTS' MOTION TO DISMISS**

**MURPHY, J.**

This case involves a dispute over whether Defendants HCL America, Inc. ("HCL-A") and HCL Technologies Limited ("HCLTech") (together, "Defendants") are obligated to pay Plaintiff C.E.B. Inc. d/b/a Windsor Group Sourcing Advisory ("Windsor") a commission for allegedly helping Defendants secure a contract to provide information technology services for a large hospital system.  After Defendants refused to pay the commission, Windsor sued, raising common-law contract, common-law tort, equitable, and statutory claims.  Before the Court is Defendants' motion to dismiss all claims against HCLTech on jurisdictional and venue grounds, and to dismiss all claims against both Defendants for failure to state a claim.  For the reasons set forth below, the Court will grant Defendants' motion to dismiss as to Windsor's Chapter 93A claim (Count III), and deny Defendants' motion to dismiss as to HCLTech and as to the breach of contract (Count I), breach of the implied covenant (Count II), common-law fraud (Count IV), and unjust enrichment (Count V) claims.

## I.      Background

### A.      Factual Background

Except where otherwise noted, the following facts are drawn from Windsor's amended complaint, Dkt. 23 ("Complaint" or "Compl."), and are accepted as true for the purposes of the motion to dismiss.

Windsor is a Nevada-based company that helps large companies outsource their information technology ("IT") operations. *Id.* ¶¶ 10, 14, 33. Windsor enters agreements with IT vendors that provide a commission to Windsor if a vendor earns a contract with a large company. *Id.* ¶ 35. HCLTech is a foreign corporation based in India with offices in Boston, Massachusetts. *Id.* ¶¶ 12, 19, 22. HCL-A is a wholly-owned subsidiary of HCLTech based in California and with offices in Boston. *Id.* ¶¶ 15, 17; Dkt. 17 at 1. HCL-A and HCLTech share officers, employees, and members of their boards of directors. Compl. ¶ 24.

Windsor and HCL-A entered into a sales agreement (the "Agreement") effective September 6, 2016, "whereby Windsor [] introduces potential new clients to [HCL-A], and [HCL-A] compensates Windsor [] for such introductions according to the terms of this Agreement." Dkt. 23-1 at 2. A representative of HCL-A signed the Agreement, and an attorney allegedly employed by HCLTech, Dkt. 32-2 ¶ 21, stamped that the Agreement was "APPROVED," Dkt. 23-1 at 7.

Section 1.2 of the Agreement governs new client opportunities and provides that:

> Windsor [] will provide [HCL-A] with relevant information regarding each New Client opportunity after [HCL-A's] acceptance of the New Client. The New Client will be deemed accepted unless [HCL-A] expressly rejects the New Client in writing within 72 hours of receipt of the New Client opportunity. [HCL-A] may reject a New Client in writing by sending an e-mail to Charles Bystock rejecting the New Client.

*Id.* at 2. Section 7.7, entitled "Notices," provides that:

> Except as otherwise provided in this Agreement, any notice, approval, request, authorization, direction or other communication under this Agreement will be given in writing, will reference this Agreement and will be deemed to have been delivered and given (a) when delivered personally; (b) three (3) business days after having been sent by registered or certified U.S. mail, return receipt requested, postage and charges prepaid, whether or not actually received; or (c) one (1) business day after deposit with a commercial overnight courier, with written verification of receipt.

*Id.* at 6. Windsor is entitled to a commission between 3.5% and 5% of gross revenue on new client contracts, and "[i]n the absence of a signed writing, the commission rate will be three-and-one-half percent (3.5%)." *Id.* at 3. "'Gross Revenue' means the gross amount charged to New Clients by Company *or its affiliates*." *Id.* (emphasis added). In addition, the Agreement contains a Massachusetts choice-of-law provision and a forum-selection clause, stating, "[b]oth parties consent to the exclusive jurisdiction and venue in the state and federal courts presiding over Boston, Massachusetts for any and all disputes arising from this Agreement." *Id.* at 6.

On February 20, 2024, Charles Bystock, a Windsor employee, sent Shrikanth Shetty, an executive acting on behalf of HCL-A and HCLTech, Compl. ¶¶ 5, 24, an email stating:

> Please reply "**ACCEPT**" to this email to confirm registration of Windsor Group's client BSWH. Baylor Scott White Health has retained [Windsor] as an advisor to outsource all of their Enterprise IT. Baylor Scott & White Health is a large healthcare system with 51 hospitals and more than 1,000 specialty clinics based in Dallas, Texas.

Dkt. 23-1 at 9–10 (emphasis in original); *see also* Compl. ¶ 5. Shetty responded, "Thanks for including us as a part of this process. As requested Accepting. Looking forward to working with WG on this. Shantanu [Baruah, Executive Vice President Healthcare for HCLTech] and team will be your point of contact." Dkt. 23-1 at 9; *see also* Compl. ¶ 66.

After that email exchange, Windsor set up meetings between Windsor, Shetty, and BSWH employees and obtained and provided information about BSWH and its needs to Defendants. Compl. ¶¶ 72–74, 76. On July 24, 2024, Defendants requested that Windsor provide additional

help in securing the BSWH deal.[1]  *Id.* ¶ 78.  Three days later, Shetty called Bystock, who was in Massachusetts at the time, and represented to him that HCL would compensate Windsor for helping to secure the BSWH deal.  *Id.* ¶ 79.  In response, Windsor met with a sales executive from Defendants on multiple occasions and provided guidance to Defendants about which employees at BSWH they should target to close the deal.  *Id.* ¶¶ 80, 82.

In 2025, Windsor learned Defendants were likely to secure the BSWH deal and called Defendants, who implied they were likely to get the deal but could not speak to Windsor about it because of a non-disclosure agreement.  *Id.* ¶¶ 83–84.  Bystock subsequently called Shetty, who asserted that Defendants had no obligation to pay Windsor.  *Id.* ¶ 85.  Counsel for Windsor sent a letter to Defendants, to which Defendants responded with two letters, one terminating the Agreement and the other asserting that Windsor was not entitled to a commission.  *Id.* ¶¶ 86–87.

## B.       **Procedural Background**

Windsor filed suit against Defendants on October 20, 2025.  Dkt. 1.  On November 12, 2025, HCL-A moved to dismiss the complaint for lack of personal jurisdiction, improper venue, and failure to state a claim.  Dkt. 18.  Windsor then filed an amended complaint on December 3, 2025.  Dkt. 23.  Defendants again moved to dismiss the amended complaint for lack of personal jurisdiction and improper venue as to HCLTech and for failure to state a claim against both Defendants.  Dkt. 26.  The Court held a hearing on March 3, 2026, and took the motion under advisement.

---

[1] The Complaint refers frequently to "HCLTech" and "HCL-A" together as "HCL."  Compl. at 1.  In such instances, the Court uses the term "Defendants."

II.    **Standard of Review**

A.    **Rule 12(b)(2)**

"When faced with a motion to dismiss under both [Federal Rules of Civil Procedure] 12(b)(2) and 12(b)(6), a district court should ordinarily decide the 12(b)(2) motion first." *Ryan v. Newark Grp., Inc.*, 814 F. Supp. 3d 7, 16 (D. Mass. 2025). "Where, as here, the Court will decide the motion [to dismiss for lack of personal jurisdiction] without first holding an evidentiary hearing, the Court applies the 'prima facie' standard of review." *Senistech Inc. v. LimeStone FZE*, 548 F. Supp. 3d 244, 252 (D. Mass. 2021). "Under this standard, 'the inquiry is whether [Windsor] has proffered evidence which, if credited, is sufficient to support findings of all facts essential to personal jurisdiction.'" *A Corp. v. All Am. Plumbing, Inc.*, 812 F.3d 54, 58 (1st Cir. 2016) (quoting *Phillips v. Prairie Eye Ctr.*, 530 F.3d 22, 26 (1st Cir. 2008)). The Court "draw[s] the relevant facts from 'the pleadings and whatever supplemental filings (such as affidavits) are contained in the record, giving credence to the plaintiff's version of genuinely contested facts.'" *Keane v. Expeditors Int'l of Wash., Inc.*, 138 F.4th 613, 615 (1st Cir. 2025) (quoting *Ward v. AlphaCore Pharma LLC*, 89 F.4th 203, 209 (1st Cir. 2023)). This includes "facts offered by" the Defendants, "to the extent they are not disputed." *A Corp.*, 812 F.3d at 58. "The court need not, however, 'credit conclusory allegations or draw farfetched inferences.'" *Watkins v. Musk*, 786 F. Supp. 3d 337, 356 (D. Mass. 2025) (quoting *Ticketmaster-N.Y., Inc. v. Alioto*, 26 F.3d 201, 203 (1st Cir. 1994)), *reconsideration denied*, 807 F. Supp. 3d 51 (D. Mass. 2025).

B.    **Rule 12(b)(6)**

When ruling on a motion to dismiss for failure to state a claim, courts "take the complaint's well-pleaded facts as true, and [it] draw all reasonable inferences in the plaintiffs' favor." *Barchock v. CVS Health Corp.*, 886 F.3d 43, 48 (1st Cir. 2018). "[C]ourts cannot consider affidavits and miscellaneous documents proffered by parties, unless such other materials are fairly

incorporated within the complaint or are susceptible to judicial notice." *Frith v. Whole Foods Mkt., Inc.*, 517 F. Supp. 3d 60, 68 (D. Mass. 2021) (internal quotation marks omitted), *aff'd on other grounds*, 38 F.4th 263 (1st Cir. 2022).  "Well-pleaded facts must be 'non-conclusory' and 'non-speculative,'" *Barchock*, 886 F.3d at 48 (quoting *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012)), such that they move the "possibility of relief" beyond "the realm of mere conjecture," *id.* (quoting *SEC v. Tambone*, 597 F.3d 436, 437 (1st Cir. 2010) (en banc)).  Overall, "[t]o survive dismissal, . . . the complaint must 'contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Tambone*, 597 F.3d at 437).

## III.    Discussion

### A.    Personal Jurisdiction

Defendants move to dismiss all claims against HCLTech—a non-signatory of the Agreement, organized under the laws of India, Compl. ¶ 11—for lack of personal jurisdiction, Dkt. 26 at 1.  "Specific jurisdiction is claim-specific and requires that the defendant's forum-related conduct gave rise to the plaintiff's claims."[2]  *Old Republic Nat'l Title Ins. Co. v. Simmons Bank*, 2025 WL 1737155, at *4 (D. Mass. June 23, 2025).  To have specific jurisdiction for claims over which the Court has diversity jurisdiction, "a plaintiff must satisfy both the forum state's long-arm statute and the Due Process Clause of the Fourteenth Amendment."  *C.W. Downer & Co. v. Bioriginal Food & Sci. Corp.*, 771 F.3d 59, 65 (1st Cir. 2014).  But "because the personal jurisdiction requirement is a waivable right, there are a variety of legal arrangements by which a litigant may give express or implied consent to the personal jurisdiction of the court," including

---

[2] There is no dispute that HCLTech is not subject to general jurisdiction in Massachusetts, which requires "a defendant's contacts with the forum state [to be] so 'continuous and systematic' that the [defendant] is essentially 'at home' there." *Old Republic Nat'l Title Ins. Co. v. Simmons Bank*, 2025 WL 1737155, at *3 (D. Mass. June 23, 2025).

forum selection clauses. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n.14 (1985) ("Where such forum-selection provisions have been obtained through freely negotiated agreements and are not unreasonable and unjust, their enforcement does not offend due process." (internal quotation marks and citation omitted)). Windsor raises a number of grounds under which the Court might exercise jurisdiction over HCLTech, including the Agreement's forum selection clause, agency theory, alter ego principles, assignment, successorship, and minimum contacts. *See id.* ¶¶ 26–31; Dkt. 32 at 11–18. The Court begins with the question of whether the Agreement's forum selection clause may give rise to personal jurisdiction over HCLTech, a non-signatory of the Agreement.

As a threshold matter, the Court must decide whether state or federal law governs the application of the forum selection clause to a non-signatory when, as here, a federal court sits in diversity, and the relevant contract contains a state choice-of-law provision. "It is a long-recognized principle that federal courts sitting in diversity 'apply state substantive law and federal procedural law.'" *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 417 (2010) (Stevens, J., concurring in part) (quoting *Hanna v. Plumer*, 380 U.S. 460, 465 (1965)). And, as a general principle, federal law governs enforcement of forum-selection clauses. *See generally Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22 (1988); *see Amyndas Pharms., S.A. v. Zealand Pharma A/S*, 48 F.4th 18, 30 (1st Cir. 2022); *see also Phillips v. Audio Active Ltd.*, 494 F.3d 378, 384 (2d Cir. 2007) ("Despite the presumptive validity of choice[-]of[-]law clauses, . . . federal law should . . . determine whether an otherwise mandatory and applicable forum clause is enforceable. . . . because enforcement of forum clauses is an essentially procedural issue, while choice[-]of[-]law provisions generally implicate only the substantive law of the selected jurisdiction." (citation omitted)); *Firexo, Inc. v. Firexo Grp. Ltd.*, 99 F.4th 304, 333 (6th Cir. 2024) (Griffin, J., dissenting) (noting that the majority of "Circuits also consider the enforcement of

forum-selection clauses a federal procedural issue governed by federal law"). But the circuits have split as to whether federal or state law governs the application of a forum-selection clause to non-signatories. Some courts emphasize that a forum-selection clause implicates venue, which raises issues of federal procedure, and therefore apply federal law to interpret the scope or applicability of such clauses. *See Albemarle Corp. v. AstraZeneca UK Ltd.*, 628 F.3d 643, 650 (4th Cir. 2010) ("[W]hen a court is analyzing a forum selection clause, which changes the default venue rules applicable to the agreement, that court will apply federal law and in doing so, give effect to the parties' agreement."); *see also Fouad on behalf of Digit. Soula Sys. v. State of Qatar*, 846 F. App'x 466, 469 (9th Cir. 2021) ("Federal law applies to interpreting a forum selection clause.").

Other circuits, however, bifurcate the analysis into questions of applicability, which are governed by state law pursuant to the *Erie* doctrine, and enforceability, which are governed by federal law. *See Firexo*, 99 F.4th at 326 (endorsing the view that "the applicability of a forum-selection clause is distinct from and antecedent to its enforceability, so courts must use the *Erie* approach to contract interpretation to determine the clause's applicability under that appropriate law"); *In re McGraw-Hill Glob. Educ. Holdings LLC*, 909 F.3d 48, 58 (3d Cir. 2018) ("Federal law controls the question of whether to enforce a forum selection clause. However, the interpretation of a forum selection clause is an analytically distinct concept from the enforceability of that clause." (cleaned up)). These courts treat the question of applying a forum-selection clause to a non-signatory as a question of scope or applicability, thus governed by state law. *See Firexo*, 99 F.4th at 327 (applying *Erie* choice-of-law principles to determine whether the law of the state in which the court sits or the parties' choice-of-law provision governs whether the forum-selection clause applies to a non-signatory); *McGraw-Hill*, 909 F.3d at 58 ("Our case law directs us to use

state law to determine the scope of a forum selection clause. . . . State law, therefore, typically governs . . . whether the clause applies to a non-signatory." (cleaned up)).  *But see Firexo*, 99 F.4th at 333 (Griffin, J., dissenting) ("[T]his 'applicability' argument just relabels a classic 'enforceability' question. . . . In short, questions about 'applicability' focus on the forum-selection clause's text to determine whether it applies to a given case.  Enforcement, however, addresses whether the clause should bind the parties irrespective of the clause's text.").  The First Circuit has not yet weighed in,[3] *see CRA Int'l, Inc. v. Dupont Registry Grp.*, 2026 WL 925684, at \*4 n.4 (D. Mass. Apr. 6, 2026), but for the reasons set forth below, the Court adopts the approach of the Sixth and Third Circuits and concludes that Massachusetts law governs the application of the forum-selection clause to HCLTech.

The Court is persuaded that the scope and applicability of a clause is distinct from its enforceability, and that whether a forum-selection clause applies to a non-signatory raises questions of applicability.  *See Firexo*, 99 F.4th at 330 (Larsen, J., concurring in part and in the judgment) ("[A]lthough we might refer colloquially to the non-signatory question as one of 'enforcement,' the substance of the non-signatory problem (*who* may 'enforce' against whom) does not map onto [] 'enforceability' questions" such as "'(1) whether the clause was obtained by fraud, duress, or other unconscionable means; (2) whether the designated forum would ineffectively or unfairly handle the suit; and (3) whether the designated forum would be so seriously inconvenient such that requiring the plaintiff to bring suit there would be unjust.'"

---

[3] Other courts in this District, however, have applied the federal law "closely related" test to similar questions, without first conducting a choice-of-law analysis or considering whether state law governs the application of a forum-selection clause to non-signatories.  *See, e.g.*, *Europa Eye Wear Corp. v. Kaizen Advisors, LLC*, 390 F. Supp. 3d 228, 231 (D. Mass. 2019); *Boom-OS, LLC v. Dom N' Tom, Inc.*, 2023 WL 6378188, at \*4 (D. Mass. Sept. 29, 2023).

(emphasis in original) (first citing *AtriCure, Inc. v. Meng*, 12 F.4th 516, 523 (6th Cir. 2021); then quoting *Wong v. PartyGaming Ltd.*, 589 F.3d 821, 828 (6th Cir. 2009))).

Further, courts in this Circuit apply state law to determine whether an arbitration agreement binds non-signatories. *See Ribadeneira v. New Balance Athletics, Inc.*, 65 F.4th 1, 20–21 (1st Cir. 2023); *Awuah v. Coverall N. Am., Inc.*, 843 F. Supp. 2d 172, 178 (D. Mass. 2012) ("The determination of whether the non-signatories are bound to arbitrate 'is generally made on the basis of 'ordinary state law principles that govern the formation of contracts.'" (quoting *Fleetwood Enters., Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (1st Cir. 2002))), *rev'd on other grounds*, 703 F.3d 36 (1st Cir. 2012). This approach is well founded in "background principles of state contract law." *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009) ("[B]ackground principles of state contract law" apply "regarding the scope of agreements (including the question of who is bound by them)."); *see also AtriCure*, 12 F.4th at 524 ("After *Arthur Andersen*, circuit courts have recognized that they now must look to the relevant state's common law to decide when nonparties may enforce (or be bound by) an arbitration agreement." (citing, *inter alia*, *Awuah*, 703 F.3d at 41–44)). This choice is instructive because "[a]n agreement to arbitrate before a specified tribunal is, in effect, a specialized kind of forum-selection clause." *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 518–19 (1974) (applying forum-selection-clause principles to arbitration clauses). "Accordingly, courts routinely apply the principles or analyses for one to the other." *Firexo*, 99 F.4th at 321 (collecting cases).

For these reasons, the Court concludes that Massachusetts law governs the application of the forum-selection clause to HCLTech.[4]  Though the Court is aware of "no Massachusetts case enforcing a forum selection clause or a limitations clause against a non[-]signatory to [a] contract," Massachusetts courts have recognized that, in limited circumstances, a non-signatory may be bound by such a clause.  *Ajemian v. Yahoo!, Inc.*, 83 Mass. App. Ct. 565, 577 (2013), *aff'd*, 478 Mass. 169 (2017); *see also GGNSC Admin. Servs., LLC v. Schrader*, 484 Mass. 181, 191 n.16 (2020) ("There are common-law rules for binding non[-]signatory third parties to a contract." (citing *Machado v. System4 LLC*, 471 Mass. 204, 209 (2015))).  Further, under Massachusetts law, there are "six bases for enforcing an arbitration agreement with respect to a non[-]signatory: (1) incorporation by reference, (2) assumption, (3) agency, (4) veil-piercing/alter ego, (5) estoppel, and (6) third-party beneficiary."  *Walker v. Collyer*, 85 Mass. App. Ct. 311, 319 (2014); *see also Arthur Anderson*, 556 U.S. at 631 (recognizing that "'traditional principles' of state law allow a contract to be enforced by or against nonparties to the contract through 'assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel'" (quoting 21 R. Lord, Williston on Contracts § 57:19, p. 183 (4th ed. 2001))).

The Court begins with estoppel, under which "an entity 'knowingly exploiting an agreement with an arbitration clause can be estopped from avoiding arbitration despite having never signed the agreement.'"  *Walker*, 85 Mass. App. Ct. at 320 (quoting *MAG Portfolio Consult, GMBH v. Merlin Biomed Grp. LLC.*, 268 F.3d 58, 61 (2d Cir. 2001)); *see also Team 125, Inc. v.*

---

[4] "Under the *Erie* approach to contract interpretation, a federal court sitting in diversity begins with a conflict-of-laws analysis using the law of the State in which it sits (here [Massachusetts])."  *Firexo*, 99 F.4th at 327. And "[w]here, as here, the parties have expressed a specific intent as to the governing law, Massachusetts courts will uphold the parties' choice as long as it is not contrary to public policy."  *Oxford Global Resources, LLC v. Hernandez*, 480 Mass. 462, 468 (2018) (internal quotation marks omitted); *see also* Dkt. 23-1 at 6 (Agreement's choice-of-law provision).  Accordingly, there is little question that here, where federal procedural law does not apply, Massachusetts law governs.

11

*Kraft Grp.*, LLC, 2021 WL 4513966, at *2 (Mass. Super. July 8, 2021) (similar); *Russo v. Manzoli*, 2021 WL 6210647, at *3 (Mass. Super. Dec. 14, 2021) ("A non[-]signatory may be estopped from denying it is obligated to arbitrate where it knowingly exploits a contract with an arbitration clause either (i) by seeking to enforce, or asserting claims under, the contract's other provisions, or (ii) by seeking and obtaining direct benefits from that contract."). Specifically, estoppel applies when someone "'knowingly accepted the benefits' of such an agreement," and the benefits "'flow[] directly from the agreement.'" *Walker*, 85 Mass. App. Ct. at 320 (first quoting *Deloitte Noraudit A/S v. Deloitte Haskins & Sells, U.S.*, 9 F.3d 1060, 1064 (2d Cir. 1993); then quoting *MAG Portfolio*, 268 F.3d at 61). The doctrine has also been applied to forum-selection clauses. *See, e.g.*, *Wildfire Prods., L.P. v. Team Lemieux LLC*, 2022 WL 2342335, at *10 (Del. Ch. June 29, 2022) (explaining that estoppel "serves to bind non-signatories who, during the life of the contract, have embraced the contract despite their non-signatory status but then, during litigation, attempt to repudiate the forum selection clause in the contract" (internal quotation marks omitted)).

Here, Windsor has alleged that HCLTech, the parent of HCL-A, has embraced, benefitted from, and operated under the Agreement with respect to the BSWH deal. *See, e.g.*, Compl. ¶ 93 (stating that "HCL," defined earlier in the Amended Complaint as HCLTech and HCL-A, collectively, "will receive" compensation that "may ultimately be in the range of $150M – $300M" as a result of the BSWH deal); *see also* Dkt. 32-1 at 17–27 (Linked In profiles of HCLTech employees describing themselves as working with BSWH); Compl. ¶ 68 (alleging that on February 20, 2024, "Baruah of HCLTech acknowledged Mr. Bystock's email . . . [and] Baruah expressed HCLTech was 'excited to partner with [Windsor] and bring these two deals home.'"); Dkt. 32-2 ¶ 18 (describing an email from Shetty indicating Shetty worked for HCLTech and gave a presentation to BSWH entitled "HCLTech Healthcare Overview"). In addition, Windsor has

alleged that HCLTech knew of, and indeed negotiated and approved, the Agreement. *See, e.g.*, Compl. ¶¶ 5, 56–60 (alleging that HCLTech was familiar with the Agreement); Dkt. 32-2 ¶ 21 (alleging that "Parminder Singh . . . a lawyer at HCLTech . . . indicated HCL's approval of the Agreement"); Dkt. 32-2 ¶ 22 (alleging that Shetty (who is alleged to be an HCLTech employee, *see* Compl. ¶ 24), negotiated terms of the Agreement). Finally, a letter from counsel for "HCL American Inc. d/b/a HCLTech" refers to HCLTech as terminating the Agreement, states "it is HCLTech's position that it was Windsor [] that did not fully perform under the Contract," and describes Windor's obligations under the Agreement as "provid[ing] [HCLTech] with relevant information regarding each New Client opportunity after [HCLTech's] acceptance of the New Client" and "assist[ing] with and facilitate[ing] agreements between HCLTech and New Clients." Dkt. 32-1 at 15 (third and fourth alterations in original).

Altogether, these facts, taken as true as the Court must at this stage of the proceedings, lead the Court to find that HCLTech must be estopped from arguing that it is not bound by the Agreement's forum-selection clause under the prima facie standard. *See A Corp.*, 812 F.3d at 58. Because a forum-selection clause constitutes consent to personal jurisdiction, *see Burger King*, 471 U.S. at 472 n.14, the Court need not consider the other theories under which it might exercise jurisdiction over HLCTech and denies Defendants' motion to dismiss all claims against HCLTech for lack of personal jurisdiction.

### B.    Venue

Defendants likewise assert that dismissal of claims against HCLTech is warranted because venue is improper in the District of Massachusetts. *See* Dkt. 27 at 19. However, the Court has already rejected Defendants' argument that the forum-selection clause does not bind HCLTech, and because the forum selection clause expressly states that "venue in the state and federal courts presiding over Boston, Massachusetts" is "exclusive," Dkt. 23-1 § 7.5, venue is proper in this

13

court, *see Rivera v. Centro Medico de Turabo, Inc.*, 575 F.3d 10, 17 (1st Cir. 2009) ("[M]andatory forum selection clauses contain clear language indicating that jurisdiction and venue are appropriate exclusively in the designated forum.'" (quoting 14D *Wright & Miller's Federal Practice and Procedure* § 3803.1 (3d ed. 1998))).  Accordingly, Defendants' motion to dismiss all claims against HCLTech for improper venue is also denied.

### C.    Failure to State a Claim

Defendants have moved to dismiss all five counts for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  *See* Dkt. 27 at 12.  The Court will deny Defendants' motion as to Counts I–II and IV–V, and grant Defendants' motion as to Count III.

### 1.    Breach of Contract

Defendants argue that Windsor failed to perform under the Agreement and therefore cannot state a claim for breach of contract.  Specifically, Defendants emphasize that when Bystock emailed Shetty about the BSWH opportunity, the email did not reference the Agreement, which Defendants contend was required by the Agreement.[5]  *See* Dkt. 27 at 20.  Defendants point to the notice provision of the Agreement ("section 7.7"), which requires that "any notice, approval, request, authorization, direction, or other communication under this Agreement . . . reference this Agreement," Dkt. 23-1 § 7.7, and argue that "[p]resenting a new client opportunity under section 1.2 is plainly a communication under the Agreement," such that Windsor's failure to reference the Agreement is a failure to perform under the Agreement, Dkt. 33 at 9; *see also* Dkt. 27 at 20–21.  Windsor contends, on the other hand, that no such reference was required.  *See* Dkt. 32

---

[5] Defendants also argue in a footnote that "Windsor's failure to provide the required notice constitutes a breach of a material term of the Agreement, thus excusing any performance by [HCL-A]."  *See* Dkt. 27 at 21 n.4.  As the First Circuit has made clear, "arguments raised only in a footnote or in a perfunctory manner are waived."  *Nat'l Foreign Trade Council v. Natsios*, 181 F.3d 38, 60 n.17 (1st Cir. 1999), *aff'd sub nom.*, *Crosby v. Nat'l Foreign Trade Council*, 560 U.S. 363 (2000).

at 19–20.  Windsor argues that the section 7.7 notice provision does not apply to the presentation of a new client opportunity, which is governed by section 1.2, under which there is no requirement that Windsor refer to the Agreement.  *See id.*; Dkt. 23-1 § 1.2.  In addition, Windsor argues that the non-electronic forms of notice listed in that section are inconsistent with . . . years of the parties' custom and practice of communicating about the Agreement over e-mail."  Dkt. 32 at 19.

Though the Court finds that the contract is unambiguous and by its plain terms requires written reference to the Agreement, as Defendants argue, "it is well settled Massachusetts law that parties, through their . . . conduct, may modify a contract."  *Bachorz v. Miller-Forslund*, 703 F.3d 27, 33 (1st Cir. 2012); *see also Cambridgeport Sav. Bank v. Boersner*, 413 Mass. 432, 439 (1992) ("Mutual agreement on modification of the requirement of a writing may be inferred from the conduct of the parties and from the attendant circumstances of the instant case." (cleaned up)).  Drawing all reasonable inferences in Windsor's favor, as appropriate on a motion to dismiss, *Barchock*, 886 F.3d at 48, Windsor has plead facts sufficient to suggest that the parties modified the notice requirement through the course of their dealings over several years after the agreement was executed, *see* Compl. ¶¶ 54, 56, and that HCL-A understood the Agreement to apply to the BSWH deal, *id.* ¶¶ 78–79; *see also Hoffman v. Thras.io Inc.*, 538 F. Supp. 3d 196, 206 (D. Mass. 2021) ("[Plaintiff] has alleged a repeated course of communications with [Defendant] confirming the terms of her equity grant.  She has also alleged multiple promises by both [Defendants] through emails.  These allegations are sufficient to overcome th[e] presumption [that the written terms of a contract express the will of the parties].").  Accordingly, the Court finds that Windsor has pled facts sufficient to survive Defendants' motion to dismiss as to Count I.

### 2.    Breach of Implied Covenant of Good Faith and Fair Dealing

Next, Defendants argue that "Windsor cannot turn ordinary breach of contract allegations into an implied covenant claim," and that Windsor has therefore failed to state a claim upon which

relief can be granted. Dkt. 27 at 21. Under Massachusetts law, "[e]very contract implies good faith and fair dealing between the parties to it." *T.W. Nickerson, Inc. v. Fleet Nat'l Bank*, 456 Mass. 562, 569–70 (2010) (quoting *Anthony's Pier Four, Inc. v. HBC Assocs.*, 411 Mass. 451, 471 (1991)). While the covenant "cannot create rights and duties not otherwise provided for in the existing contractual relationship," it "requires that neither party shall do anything that will have the effect of destroying or injuring the right of the other party to the fruits of the contract." *Id.* at 570 (internal quotation marks omitted). The locus of the inquiry is therefore "the party's manner of performance," and the plaintiff need only identify "a lack of good faith," rather than "bad faith." *Id.*

Windsor plausibly pleads such a claim. *See, e.g.*, Compl. ¶ 84 (alleging that "HCL decided to use its purported non-disclosure obligations as an excuse to hide information from Windsor and thereby keep it in the dark" regarding the HCL-BSWH deal); *id.* ¶ 85 (describing Shetty as reversing his position on Defendants' payment obligations); *id.* ¶ 110 (alleging that Defendants claimed to have "no obligation to pay commissions to Windsor" as "another entity (ISG) had assisted" BSWH); *id.* ¶ 112 ("HCL's actions are in bad faith."); *id.* ¶ 113 ("HCL is acting in bad faith to improperly secure economic advantages, including . . . [by] attempting to force Windsor to accept far less money than Windsor would be entitled to over the life of HCL's deal with" BSWH). And, notwithstanding Defendants' argument, Windsor's factual allegations go far beyond merely repackaging the breach of contract claim and suffice to state a claim for breach of the implied covenant. *Compare id.* ¶¶ 100–05 (focusing on lack of payment for commissions), *with id.* ¶¶ 108–14 (focusing on misrepresentation of obligations and securing economic

16

advantages).   Accordingly, this claim is not duplicative of the breach of contract claim, and Defendants' motion to dismiss is denied as to this count.[6]

### 3.    Chapter 93A Claim

"Chapter 93A prohibits unfair or deceptive acts or practices in trade and commerce." *Gottlieb v. Amica Mut. Ins. Co.*, 57 F.4th 1, 9 (1st Cir. 2022); *see also* Mass. Gen. Laws ch. 93A, § 2(a) ("Chapter 93A").   Defendants argue that Windsor's Chapter 93A claim fails because the "center of gravity" of the purported misconduct was not in Massachusetts and because Windsor fails to provide evidence of bad faith necessary to support a Chapter 93A claim.   Dkt. 27 at 25–26. The Court turns first to Defendants' "center of gravity" argument.

To state a claim under Chapter 93A, the alleged misconduct must have "occurred primarily and substantially within the commonwealth."   Mass. Gen. Laws ch. 93A, § 11.   "The key question . . . is whether the center of gravity of the circumstances that give rise to the [Chapter 93A] claim is primarily and substantially within Massachusetts," which requires "a fact intensive inquiry that is unique to each case." *Cynosure, LLC v. Reveal Lasers LLC*, 793 F. Supp. 3d 315, 354 (D. Mass. 2025) (alteration in original) (internal quotation marks omitted).   "Although this determination is fact specific and is generally not the appropriate subject for a motion to dismiss, it is nevertheless a question of law for the Court." *CrunchTime! Info. Sys., Inc. v. Frischs Rests., Inc.*, 768 F. Supp. 3d 183, 185 (D. Mass. 2025) (internal quotation marks omitted).   "In answering this question of law, the Massachusetts Supreme Judicial Court ('SJC') has not articulated what factors to consider but has instead described the application of § 11 as a highly 'functional inquiry' that is not based on any 'precise formula.'" *Id.* (quoting *Kuwaiti Danish Comput. Co. v. Digital Equip. Corp.*, 438

---

[6] Defendants also argue that "Windsor's own failure to perform first bars any claim that HCL[-]A breached an implied covenant."   Dkt. 27 at 22.   But the Court has already rejected Defendants' arguments as to breach of contract. *See supra* Section II.C.2.

Mass. 459, 472–73 (2003)).  Other courts in this District have generally concluded that "[a]t the pleading stage a [ch. 93A,] § 11 claim may survive a motion to dismiss based on a primarily and substantially challenge upon a showing that the plaintiff is located in Massachusetts and that the injury occurred in Massachusetts."  *Nasuni Corp. v. ownCloud GmbH*, 607 F. Supp. 3d 82 (D. Mass. 2022) (second alteration in original) (internal quotation marks omitted); *see also CrunchTime!*, 768 F. Supp. 3d at 186 ("Other sessions of this Court, when conducting this inquiry, have declined to dismiss a claim under § 11 so long as the complaint alleges that the plaintiff is located[] and claims an injury in Massachusetts.").

Windsor asserts that the alleged misconduct meets the "primarily and substantially" requirement because Bystock was in Massachusetts when he received Shetty's phone call purportedly promising to compensate Windsor for its efforts securing the BSWH deal.  *See* Compl. ¶ 79; Dkt. 32 at 23.  But Windsor is a Nevada-based company with a principal place of business in Florida.  Compl. ¶ 10.  Therefore, any injury from Defendants' conduct will likely be felt not in Massachusetts, but in one or both of those states.  *See Cynosure*, 793 F. Supp. 3d at 355 (deeming losses felt where the plaintiff was headquartered and where "about half of its employees work[ed]").  The Court is hard pressed, then, to conclude that conduct consisting of a single phone call made to an individual located in Massachusetts at the time of the call, arose "primarily and substantially" within the Commonwealth, even in light of the low bar at the pleading stage.  *See CrunchTime!*, 768 F. Supp. 3d at 186.

Windsor also points to communications between Defendants' in-house counsel and Windsor's Massachusetts-based agent in the lead-up to the filing of this suit to bolster the connection between the dispute and the Commonwealth.  Dkt. 32 at 23 (citing Compl. ¶¶ 127–32).  Defendants argue persuasively that a party may not "invoke Chapter 93A simply by retaining

Massachusetts counsel" and pointing to "communications its Massachusetts-based counsel received after litigation became inevitable." Dkt. 33 at 10–11 (citing *Spring Inv. Servs., Inc. v. Carrington Cap. Mgmt., LLC*, 2013 WL 1703890, at *12 (D. Mass. Apr. 18, 2013)); *see also Allscripts Healthcare, LLC v. DR/Decision Res., LLC*, 521 F. Supp. 3d 112, 123 (D. Mass. 2021) (the Court must "focus its [primarily and substantially] analysis" on "the actionable conduct said to *give rise* to the violation" (emphasis added) (quoting *Monahan Prods., LLC v. Sam's E., Inc.*, 463 F. Supp. 3d 128, 151 (D. Mass. 2020))). But even assuming, as Windsor argues, that these communications are actionable in the context of this case because they "were made for the purpose of dodging HCL's contractual obligations and extracting extra-contractual benefits," Dkt. 32 at 23, communications to Massachusetts-based agents of a non-Massachusetts-based company are insufficient to establish the "center of gravity" in Massachusetts for largely the reasons set forth above. Accordingly, the Court finds that Windsor has failed to plead sufficient facts to demonstrate that the conduct at issue occurred primarily and substantially in Massachusetts. The Court, therefore, need not address Defendants' additional arguments as to the Chapter 93A claim and grants Defendants' motion to dismiss as to Count III.

### 4.    <u>Common-Law Fraud</u>

To state a claim for common-law fraud under Massachusetts law, a plaintiff must allege that a defendant: "(1) made a false representation of material fact, (2) with knowledge of its falsity, (3) for the purpose of inducing [the plaintiff] to act on this representation, (4) which [the plaintiff] justifiably relied on as being true, to [its] detriment." *Sullivan v. Five Acres Realty Tr.*, 487 Mass. 64, 73 (2021). Defendants contest the second prong, arguing that "Windsor's claim fails because it . . . does not allege that Mr. Shetty knew his statement was false when made" and that a mere

"broken promise is not fraud."[7]    Dkt. 27 at 27.    However, the Amended Complaint includes allegations indicating that Shetty knew his statement was false when made. *See, e.g.*, Compl. ¶ 6 ("When he called Mr. Bystock, Mr. Shetty falsely promised that HCL-A and HCLTech would compensate Windsor for its efforts . . . ."); *see also Promise*, *Black's Law Dictionary* (12th ed. 2024) (defining "false promise" as a "promise made with no intention of carrying it out").

Defendants also argue that Windsor has not pled fraud with particularity as required under Federal Rule of Civil Procedure 9(b) ("Rule 9(b)").  *See* Dkt. 27 at 27; Dkt. 33 at 12.  Rule 9(b) requires that a plaintiff plead the "who, what, where, and when of the alleged fraudulent conduct." *Foisie v. Worcester Polytechnic Inst.*, 967 F.3d 27, 50 (1st Cir. 2020).  The Amended Complaint clearly meets all of these requirements.  *See* Compl. ¶¶ 79 ("Mr. Shetty called Mr. Bystock in Massachusetts and falsely represented to him that HCL would compensate Windsor for its efforts in securing the Baylor Scott deal.  That call occurred on or about July 27, 2024.").  In sum, Windsor has adequately pled a common-law fraud claim, and the Court denies Defendants' motion to dismiss as to Count IV.

### 5.    Unjust Enrichment

Defendants do not contest that Windsor has adequately pled the elements of unjust enrichment. *See* Dkt. 27 at 22; Dkt. 33 at 9–10.  Defendants argue instead that Windsor's unjust enrichment claim "must . . . be dismissed because it . . . simply repackages the breach allegations," and "a party with an adequate remedy at law cannot claim unjust enrichment."  Dkt. 27 at 22 (quoting *Shaulis v. Nordstrom, Inc.*, 865 F.3d 1, 16 (1st Cir. 2017)).

---

[7] Defendants do not appear to contest the other elements of Windsor's fraud claim. *See* Dkt. 27 at 27; Dkt. 33 at 11–12.

However, "[w]hile it is improper to claim unjust enrichment when there is an adequate remedy of law, a district court may not dismiss a claim for unjust enrichment simply on the basis that a plaintiff also seeks a claim for breach of contract." *Capstone Headwater LLC v. EdutainmentLive LLC*, 2021 WL 5882409, at *6 (D. Mass. Dec. 13, 2021) (internal quotation marks omitted). Because, "[a]t this stage, it is still unclear whether [Windsor] has an adequate remedy at law with regard to its breach of contract claim . . . , [Windsor] is entitled to proceed with the unjust enrichment claim as an alternative theory of recovery."[8] *Id.* Accordingly, Defendants' motion to dismiss is denied as to Count V.

## IV.    Conclusion

For the foregoing reasons, Defendants' motion to dismiss is GRANTED in part and DENIED in part.

**So Ordered.**

/s/ Brian E. Murphy
Brian E. Murphy
Dated: May 7, 2026                          Judge, United States District Court

---

[8] Defendants seem to contend that Windsor is obligated to expressly state that the unjust enrichment claim is pled in the alternative rather than pleading them "in parallel." Dkt. 33 at 9. But Defendants provide no support for this contention, and the Court is unpersuaded. *See Lass v. Bank of Am., N.A.*, 695 F.3d 129, 140 (1st Cir. 2012) ("Although the Bank is correct that damages for breach of contract and unjust enrichment are mutually exclusive, it is accepted practice to pursue both theories at the pleading stage." (citation omitted)).